**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br>    JOHN TARO,<br>            Debtor | Chapter 13<br><br>Case No. 19-10982 (BLS)<br>(Re: docket numbers 17, 18, 25) |

| | |
|---|---|
| William F. Jaworski, Jr., Esquire<br>1274 S. Governors Avenue<br>Dover, DE 19904<br>*Counsel for Debtor* | Adam Hiller, Esquire<br>Hiller Law LLC<br>1500 North French Street, 2nd Floor<br>Wilmington, DE  19801<br>*Counsel for Manufacturers and<br>Traders Trust Company* |

MEMORANDUM OPINION[1]

On May 3, 2019, John Taro (the "Debtor") filed a voluntary Chapter 13 petition in the United States Bankruptcy Court for the District of Delaware.  After a hearing on June 24, 2019, the Debtor's Chapter 13 Plan was confirmed.[2]

On July 1, 2019, Manufacturers and Traders Trust Company (the "Claimant" or "M&T") filed a secured claim in the amount of $222,416.32.[3]  On the same date,

---

[1] This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. This Court has jurisdiction to decide this claim objection pursuant to 28 U.S.C. § 157 and § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (K).

[2] The Debtor's Chapter 13 Plan is docket no. 4 (the "Plan").  The Order dated June 25, 2019, confirming the Debtor's Plan, is docket no. 13 (the "Confirmation Order").

[3] Proof of Claim No. 2.  M&T asserts that the claim is secured by a judgment lien on the Debtor's real property located in Delaware. The total claim amount is comprised of a judgment in the amount of $189,991.18, plus awarded prejudgment interest of $27,947.08, post-judgment interest of $4,041.06, and costs of $437.00.  M&T asserts that post-judgment interest continues to accrue on the claim at the fixed rate of 2.40% per annum.

M&T also filed an Objection to the Debtor's Exemptions[4] and a Motion to Dismiss and to Vacate, or in the alternative, Modify the Confirmation Order.[5] In those filings, M&T asserts that, on the petition date, the Debtor did not reside at 1284 Westville Road, Marydel, Delaware (the "Delaware Property"), as claimed, but in Ellicott City, Maryland. In the Exemption Objection, M&T argues that Bankruptcy Code § 522(b)(3)(A) prevents the Debtor from asserting Delaware exemptions. In the Dismissal Motion, M&T argues that this bankruptcy case should be dismissed for improper venue and for filing in bad faith. Alternatively, M&T argues that the Confirmation Order should be vacated or modified for wrongfully attempting to modify M&T's lien against the Property.

The Debtor opposes the relief requested in the Exemption Objection and the Dismissal Motion, arguing that he resides in the Delaware Property and that his confirmed Plan is proper and binding on all creditors, including M&T. On August 3, 2019, the Debtor filed a Motion to Vacate Judgment and Avoid Lien on Real Estate[6] to avoid M&T's lien against the Delaware Property.

At a hearing on July 30, 2019, the parties agreed to submit letter briefs and exhibits and asked the Court to decide the pending matters based on those filings. Briefing has been completed. For the reasons set forth herein, the Exemption Objection will be overruled, and the Dismissal Motion will be denied. Pursuant to the Debtor's request, the Court will defer consideration of the Motion to Avoid Lien

---

[4] Docket no. 17 (the "Exemption Objection").
[5] Docket no. 18 (the "Dismissal Motion").
[6] Docket no. 25 (the "Motion to Avoid Lien").

to allow the parties additional time to take discovery and obtain further information regarding the value of the Delaware Property.

## FACTS

On January 28, 2014, the Debtor purchased the Delaware Property for a purchase price of $120,000.[7] The Debtor claims that he intended the Delaware Property would be his primary residence, although he states that he returns to his father's property in Ellicott City, Maryland (the "Maryland Property") from time to time to attend to his father's health and assist his father with his personal affairs.[8]

The Debtor's obligation to M&T arises from his personal guaranty of two merchant accounts for a business called Brick House Spring Water Distributors, LLC ("Brick House").[9] Brick House was formed on October 17, 2016, with the Debtor listed as the President and Resident Agent for Brick House at the Maryland Property's address.[10] On January 19, 2017, the Debtor executed and submitted to M&T a Merchant Services Application on behalf of Brick House, listing the company's address at the Maryland Property.[11]

In October 2017, M&T filed a complaint against Brick House and the Debtor, individually, in the United States District Court for the District of Maryland (the "Maryland District Court").[12] The complaint alleges that Brick House and the Debtor

---

[7] Debtor's Response Brief, docket no. 29, Ex. 1.
[8] Debtor's Response Brief, docket no. 29, Ex. 3 (Affidavit of Thomas Taro, Sr.).
[9] M&T's Letter Brief dated September 4, 2019, docket no. 28 (the "M&T Brief"), Ex. 3 ¶ 11, Ex. 5 ¶ 11.
[10] M&T Brief, Ex. 1.
[11] *Id.*, Ex. 2.
[12] *Id.*, Ex. 3. The complaint also lists Edward Young, a citizen of the Commonwealth of Virginia, as a defendant. Young, the Chief Executive Officer of Brick House, also signed the Merchant Services Application and a personal guaranty. *Id.*

breached their contractual obligations to M&T under the Merchant Services Agreement and the personal guaranty by, among other things, failing to pay costs, fees, assessments, fines and penalties associated with chargebacks and unauthorized transactions on the merchant accounts.[13] The complaint's caption listed the Debtor's address at the Maryland Property.[14] Service of process for Brick House and the Debtor was made by a private process server on October 19, 2017 at the Maryland Property.[15]

On or about July 25, 2018, the Maryland District Court issued a Memorandum Opinion and Order granting M&T's motion for summary judgment against the Debtor, Brick House and Young (a third defendant). (the "Maryland Judgment").[16] On or about September 7, 2018, M&T's attorney filed an Affidavit of Foreign Judgment domesticating the Maryland Judgment in the Superior Court of Delaware.[17]

## DISCUSSION

A. *Does the Confirmation Order bar M&T from pursuing its motions?*

The Debtor's Plan was confirmed on June 24, 2019. M&T timely filed its claim, the Exemption Objection and the Dismissal Motion on July 1, 2019.[18] The Plan does

---

[13] *Id.*
[14] *Id.*
[15] *Id.*, Ex. 4.
[16] Dismissal Motion, Ex. A.
[17] *Id.*
[18] Although M&T received notice of the bankruptcy filing, it asserts that it did not receive notice and a copy of the Debtor's Plan.

not provide for any payments to secured creditors but provides for the distribution of plan payments totaling $17,000 pro-rata to unsecured creditors.[19]

As a threshold matter, the Debtor argues that M&T is barred from challenging the final and binding Confirmation Order.  The Debtor relies upon Bankruptcy Code § 1327(a), providing that:

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted or has rejected the plan.[20]

The Debtor also asserts that caselaw recognizes the *res judicata* effect of confirmation orders.[21]  These decisions, however, are not on point.[22]  This Court has previously rejected an overly broad interpretation of the United States Supreme Court's decision in *Espinosa* asserting that a confirmed plan, mailed to the affected party, is binding on that party irrespective of whether such relief is permissible or even expressly prohibited by the Code.[23]

M&T argues that the Confirmation Order contains language allowing plan modifications.  Here, the Debtor's plan was confirmed prior to the claims bar date,[24]

---

[19] Docket No. 4.
[20] 11 U.S.C. §1327(a).
[21] *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S. Ct. 1367, 176 L.Ed.2d 158 (2010); *Educational Credit Mgmt. Corp. v. York (In re York)*, 250 B.R. 842 (Bankr. D. Del. 2000).
[22] Both *Espinosa* and *York* consider whether claims for interest owing on student loan debt are dischargeable without a separate adversary proceeding determining hardship.  Neither case addresses determining the validity, priority, or extent of liens on real property.
[23] *In re Vidal*, No. 12-11758 (BLS), 2013 WL 441605, *6 (Bankr. D. Del Feb. 5, 2013). The Court also determined that plan confirmation will not summarily determine issues regarding lien-stripping under § 1322(b)(2), deciding that "in this jurisdiction, plan provisions that value and strip liens on home mortgages are dependent upon the outcome of separate proceedings." *Id*. at *5.
[24] Plan confirmation was held on June 24, 2019; the proof of claims bar date in this case was July 12, 2019.  Docket no. 6.

5

and the Confirmation Order contains language allowing certain modifications to the Plan after confirmation, specifically:

> **Filing Amended Plans:**
> (1) Within ten (10) days after the Bankruptcy Court resolves the avoidability, priority, or extent of a lien, or any objection to claim, the Debtor shall file an amended Plan to provide for the allowed amount of the claim if the allowed amount differs from the amount stated in the Plan.
> (2) Debtor also shall file an amended Plan within thirty (30) days after the claims bar date(s) in the event that the claims as filed cause the Plan to be underfunded and Debtor does not object to the claim.[25]
> . . .
>
> After the claims objection deadline, the plan shall be deemed amended to conform to the claims filed or otherwise allowed.[26]

Clearly the Confirmation Order allows the Plan to be modified post-confirmation to conform to the claims filed after confirmation, but before the bar date. This includes M&T's claim. Further, the Confirmation Order allows plan modifications consistent with the outcome of the Debtor's Motion to Avoid Liens. M&T filed its claim and its motions in a timely manner.[27] The Court concludes that the Confirmation Order does not bar M&T from pursuing its motions.

---

[25] Confirmation Order, Section II.D.
[26] *Id.*, Section III.A.
[27] M&T's objection to the Debtor's exemption is timely filed pursuant to Fed.R.Bankr.P. 4003(b)(1), which allows a party in interest to file an objection within 30 days after the meeting of creditors held under § 341(a) is concluded. The Debtor's § 341 meeting of creditors was held on June 3, 2019 and M&T's objection was filed on July 1, 2019.

6

B. *Exemptions*

a. *Delaware law and exemptions in bankruptcy*

"[T]he filing of a voluntary petition in bankruptcy court commences a bankruptcy proceeding and creates an estate."[28] "An estate in bankruptcy consists of all the interests in property, legal and equitable, possessed by the debtor at the time of filing, as well as those interests recovered or recoverable through transfer and lien avoidance provisions."[29] An individual debtor, however, may exempt his or her interest in certain property from the bankruptcy estate as permitted by 11 U.S.C. § 522.[30]

Section 522(b) provides that a debtor may choose to take either a set of exemptions provided for by state law or a set of uniform federal exemptions listed in § 522(d), "unless the State law that is applicable to the debtor ... specifically does not so authorize."[31] "In other words, a state may 'opt out' of the federal list of exemptions and force a debtor to take only those exemptions provided for under his or her state law."[32] Delaware has elected to "opt out" of the federal list:

> In accordance with § 522(b) ..., in any bankruptcy proceeding, an individual debtor *domiciled in Delaware* is not authorized or entitled to elect the federal exemptions as set forth in § 522(d) ... and may exempt only that property from the estate as set forth in subsection (b) of this section.[33]

---

[28] *In re Neitzelt*, 387 B.R. 649, 651 (Bankr. D. Del. 2008) (quoting *O'Dowd v. Trueger (In re O' Dowd)*, 233 F.3d 197, 202 (3d Cir.2000) (citing 11 U.S.C. § 541(a)).
[29] *Neitzelt*, 387 B.R. at 651 (quoting *Owen v. Owen,* 500 U.S. 305, 308, 111 S. Ct. 1833, 114 L.Ed.2d 350 (1991)(superseded by statute on other grounds)).
[30] *Id.*
[31] *Id.* (citing 11 U.S.C. § 522(b); *Owen,* 500 U.S. at 308)).
[32] *Id.* (citing *Owen*, 500 U.S. at 308)).
[33] 10 Del. C. § 4914(a) (emphasis added).

Delaware law provides its own list of exemptions, including what is colloquially referred to as the homestead exemption, as follows:

> (c) In any federal bankruptcy … proceeding, an individual debtor and/or such individual's spouse *domiciled in Delaware* shall be authorized to exempt from the bankruptcy estate, … the following:
>
>> (1) Equity in real property … which constitutes a debtor's principal residence in an aggregate amount not to exceed … $125,000 … .[34]

The Debtor in this case has exempted the Delaware Property under the Delaware homestead exemption. M&T asserts that the Debtor is not domiciled in Delaware and, therefore, has no right to exempt the Delaware Property or avoid its lien against that property.

    b. *Is the Debtor domiciled in Delaware?*

"In an apparent attempt to discourage debtors from moving to states with more generous exemption rights and with a view toward filing bankruptcy, the [Bankruptcy Abuse Prevention and Consumer Protection Act of 2005] extended the period for determining the debtor's domicile."[35] Section 522(b)(3) allows a debtor to exempt property under a state or local law that is:

> applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single State for such 730-day period, the place

---

[34] 10 Del. C. § 4914(c)(1) (emphasis added).

[35] *In re Kern*, 576 B.R 817, 819-20 (Bankr. W.D. Va. 2017) (citing 4 Collier on Bankruptcy, ¶ 522.06 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Section 522(b)(2) of the Bankruptcy Code provided that where property is exempt under state law, the applicable state or local law is that 'place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer period of such 180-day period than in any other place ….' 11 U.S.C. § 522(b)(2)(A)." BAPCPA extended the period for determining the debtor's domicile from 180 days to 730 days.)

8

in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place.[36]

Because the petition in this case was filed on May 3, 2019, this section requires the Court to determine whether the Debtor was domiciled in Delaware on May 3, 2017. Because M&T argues that the Debtor was domiciled in Maryland – or both Maryland and Delaware – on that date, M&T asserts that the Court must determine which state the Debtor was domiciled for the greater number of days between November 4, 2016 and May 3, 2017.

M&T argues that the Debtor's bankruptcy petition is simply forum-shopping to obtain the beneficial Delaware homestead exemption.[37] To support its argument, M&T has provided the following evidence:[38]

(i) The Maryland State Department of Assessments and Taxation lists the Debtor as the resident agent for Brick House at the Maryland Property address. The limited liability company was formed on October 17, 2016, which is after the 2014 date when the Debtor purchased the Delaware Property.

(ii) The Debtor executed the Merchant Application on January 19, 2017 "in connection with Brick House and himself," listing his address at the Maryland Property.

(iii) After default, on October 11, 2017, M&T filed a complaint against the Debtor and Brick House in the Maryland District Court and listed the Debtor's address (as resident agent of

---

[36] 11 U.S.C. § 522(b)(3).

[37] M&T contends that the difference between Delaware and Maryland exemptions is significant because "if Delaware law governs the Debtor's available exemptions, then the Debtor is entitled to a generous $125,000 exemption under 10 Del. C. § 4914(c)(1), whereas under Maryland law he would be entitled to an exemption of $6,000 under Md. Code Ann. Cts. & Jud. Proc. § 11-504(b)(5), or at most $25,150 under Md. Code Ann. Cts. & Jud. Proc. § 11-504(f)(1)(i)(2), Real Prop. § 8-203(d)(3)(iii)." Docket number 28 at 2-3. M&T also claims that the $25,150 exemption is available only to "owner-occupied residential real property," and, because M&T argues the Debtor does not occupy the Delaware Property, the exemption would not apply. *Id.*

[38] Docket No. 28, Exs. 1 – 8.

9

Brick House and for him individually) at the Maryland Property. Service of Process by a private process server occurred at the Maryland Property on October 19, 2017.

(iv) Paragraph 3 of M&T's complaint alleged that "John Taro is domiciled in the State of Maryland and, therefore, is a citizen of the State of Maryland" and the Debtor filed an answer admitting the allegation. M&T alleges that this "was a material allegation to that complaint, as it was required for a showing of diversity in order for the District Court to have jurisdiction, and the Debtor should be collaterally estopped and judicially estopped from denying that fact."[39]

(v) The Debtor filed federal tax returned for 2017 and 2018, which (a) list his address as a post office box in Maryland; (b) attach a W-2 to the 2018 return showing that the Debtor had a part-time job with the Howard County Government, and listing the same Maryland address; (c) the 1099's attached to the returns, "which are presumably the locations where he requested that his benefits and annuity payment should be sent" also list the same Maryland address; and (d) the accountant who prepared the returns was located in Maryland.

(vi) The Debtor claimed to work at Brick House, a spring water distributor located in Ellicott City, Maryland, which is a about a two-hour commute from the Delaware Property.

(vii) In 2016, two M&T bank accounts were opened for Brick House in Maryland, and the Debtor was "coded" as the signatory/owner for those accounts. An M&T employee declaration states that the record of the accounts did not indicate any transactions were conducted in Delaware.

(viii) M&T argues that the Debtor's testimony at the § 341 Meeting of Creditors "casts serious doubt on his current position that he was domiciled at any time in Delaware, much less during the Applicable Exemption Period."[40] The transcript of the meeting (extended from the part quoted by M&T) shows the following exchange:

---

[39] Docket No. 28, at 4.
[40] Docket No. 28, at 5.

10

> MR. JOSEPH: Have you lived in Delaware more than two years?
>
> MR. TARO: That's a gray area. I started paying taxes this year.
>
> MR. JOSEPH: When did you move to Delaware?
>
> MR TARO: I bought a house in 2015.[41]
>
> MR. JAWORSKI: He bought the house here with the intention of moving here, and then since that time, he has been taking care of his ill father over in Baltimore, so he has been back and forth.
>
> MR. JOSEPH: Which do you consider your domicile?
>
> MR. TARO: Delaware.
>
> MR. JOSEPH: Okay. For more than two years. Okay, that's all we need.[42]

(ix) The Debtor's 2017 and 2018 Maryland state tax returns show the following: (i) both returns were filed on Form 502 (Maryland Resident Income Tax Form), instead of Form 505 (Maryland Nonresident Tax Form), (ii) The Debtor lists the Maryland Property as his "physical address" on both returns, (iii) the tax form includes a section called "Part-Year Resident," but the Debtor has not made any notation in that section; (iv) the Debtor's phone numbers on the forms are 410 area code, which is in Maryland, and (v) both returns are signed under penalties of perjury.[43]

(x) The Debtor has not filed tax returns in Delaware.[44]

The Debtor claims that he has had only one domicile - - Delaware - - since 2014 when he purchased the Delaware Property. The Debtor has provided an affidavit in

---

[41] The transcript states 2015, although other evidence lists the purchase in 2014.
[42] Docket number 28, Ex. 9 at 4.
[43] Docket number 30, Ex. 12.
[44] Docket number 30, at 4.

11

which he states that (i) he purchased the Delaware Property in 2014 and has always intended it to be his primary domicile and place of residence; (ii) he spends a minimum of 4 days a week at the Delaware Property; (iii) he travels to Maryland at least once a week to help his father with his heath, personal affairs, and business, and usually stays for up to three consecutive days because going back and forth each day would be too costly due to gasoline prices and tolls; and (iv) he does not own property in Maryland, but stays with his father when he is there.[45]

To further support his position, the Debtor attached an affidavit by his father, in which his father states that: (i) he [Debtor's father] owns the Maryland Property; (ii) the Debtor does not maintain a residence at the Maryland Property, (iii) the Debtor visits the Maryland Property frequently (on average 2-3 days each week) to take him to medical appointments, assist with medications, and generally help him because he is elderly.[46] The Debtor also provided an affidavit by his neighbor at the Delaware Property, in which the neighbor states that (i) he has observed the Debtor spending a minimum of 4 days each week at the property since he purchased it in 2014, and (ii) he helps watch over the property when the Debtor is in Maryland attending to his father.[47]

The Debtor also provided a copy of the title report showing that he owns the Delaware Property, and a copy of the real estate tax payment history, showing that he has paid the real estate taxes for the Delaware Property.[48]  The Debtor also

---

[45] Docket number 29.
[46] Docket number 29, Ex. 3.
[47] Docket number 29, Ex. 4.
[48] Docket number 29, Ex. 1 and Ex. 2.

12

attached a copy of his Delaware driver's license, which was issued on February 15, 2019.[49]

M&T argues that the Debtor's evidence showing ownership of the Delaware Property and payment of taxes does not prove domicile. M&T also argues that the Debtor's affidavit should be given little weight because it is self-serving, and the affidavits of the Debtor's father and neighbor should likewise be given little weight since they have a close relationship with the Debtor and their affidavits do not overcome the documentary evidence provided by M&T.

"A person's domicile is said to be situate at that one place where an individual has a present intention of permanent or indefinite residence."[50] Domicile is described in Collier on Bankruptcy as follows:

> "Domicile" as used in section 522 means more than mere residence. Although domicile and residence are often loosely used as synonymous terms, the specified reference to each in the Code indicates an intention to maintain a legal distinction between them. The residence of a debtor may be nothing more than a place of sojourn. While ordinarily used in a sense of fixed and permanent abode, as distinguished from a place of temporary occupation, the term "residence" does not include the intention required for domicile. Domicile means actual residence coupled with a present intention to remain there. It is the place where one intends to return when one is absent and where one's political rights are exercised. Mere physical removal to another jurisdiction without the requisite intent is insufficient to effect a change of domicile. The fact that the debtor, therefore, has resided elsewhere during the 730-day period will not defeat the applicability of the law of the state where the debtor keeps the principal home.[51]

---

[49] Docket number 29, Ex. 4.
[50] *In re Porvaznik*, 456 B.R. 738, 740 (Bankr. M.D. Pa. 2011) (citing *Hill v. City of Scranton*, 411 F.3d 118, 130 (3d Cir. 2005)).
[51] 4 Collier on Bankruptcy ¶ 522.06 ((Alan N. Resnick & Henry J. Sommer eds., 16th ed.)) (footnotes omitted). Delaware Courts have considered the issue of domicile in other contexts and have noted that:

13

"[A] person may have more than one residence, but only one domicile …[a] change in residence without a change in an intent to return to the original state does not indicate a change in domicile."[52]

The evidence before the Court indicates that the Debtor may have had more than one residence over the past few years (particularly between November 4, 2016 and May 4, 2017), but that the Debtor intended that the Delaware Property was his permanent domicile since he purchased it in 2014. The Debtor's affidavit stated that his frequent multi-day visits to assist his father in Maryland did not alter his intent that his domicile was in Delaware. Other case law recognizes that staying at another location, sometimes for lengthy periods of time, without an intent to change domicile, will not change one's domicile.[53]

M&T's evidence shows that the Debtor worked in Maryland and paid taxes in Maryland. M&T's evidence also shows that the Debtor started the Brick House

---

[A] domicile is defined as a dwelling place with the intention to make that place the resident's permanent home. It requires a concurrence of the fact of living at a particular place with the necessary intention of making that the permanent home.

*McGinnes v. State Farm Mutual Ins. Co.*, C.A. No. S12C-06-037, 2013 WL 5347136, *4 (Del. Super. Sept. 24, 2013) (quoting *Fritz v. Fritz*, 187 A.2d 348, 349 (Del. 1962)). *See also Williamson v. The Standard Fire Ins. Co.*, C.A. No. 04C-07-033, 2005 WL 6318348, *5 (Del. Super. Aug. 19, 2005) (same).

[52] *In re Kern*, 576 B.R. 817, 820 (Bankr. W.D. Va. 2017) (citing *In re Koons*, 225 B.R. 121, 123 (Bankr. E.D. Va. 1998); *Smith v. Wellberg (In re Wellberg)*, 12 B.R. 48 50-51 (Bankr. E.D. Va. 1981)).

[53] *See In re McKeithan*, 486 F. Appx. 482 (5th Cir. 2012) (holding that a chapter 7 debtor who lived with her daughter for a number of years due to health reasons did not abandon her homestead, noting that the debtor testified that she always intended to return to her home and, among other things, kept the utilities, taxes and insurance up-to-date); *In re Porvaznik*, 456 B.R. 738 (Bankr. M.D. Pa. 2011) (holding that a debtor residing with her spouse in Louisiana while he was stationed there as a member of the United States Air Force did not change her domicile from Pennsylvania). Considering the issue of domicile in a divorce proceeding, the Third Circuit Court of Appeals decided that "a domicile thus once acquired by an individual is not lost by a subsequent absence from the place of domicile, whether for business or pleasure, if the individual has a present and continuous intention not to make his home at the place visited but to return to his home in the place of original domicile. The fact that such absences are frequent or lengthy makes no difference if the intent to return is ever present." *Berger v. Berger*, 210 F.2d 403, 405 (3d Cir. 1954) (citations omitted).

14

business venture in Maryland, opened bank account for the business in Maryland, and identified himself as the resident agent for the business using his father's Maryland address. People often live and work in different states, but it is not enough to show intent to change domicile.[54] These facts are consistent with the Debtor's admission that he spends a significant amount of time with his father at the Maryland Property and may have had two residences, but they do not overcome the Debtor's affidavits. The Debtor's affidavits may be self-serving, but the Debtor's subjective intention is repeatedly cited as dispositive on this issue. "Unless a person's intent changes, the domicile is not altered."[55]

One item raised by M&T that must be reviewed in more detail is the Debtor's admission on November 9, 2017 to the allegation in the Maryland District Court complaint that "John Taro is domiciled in the State of Maryland and, therefore, is a citizen of the State of Maryland."[56] M&T argues that the Debtor should judicially estopped from denying that his domicile was in Maryland in 2017.

"The doctrine of judicial estoppel prevents a litigant from asserting a position that is inconsistent with one he or she previously took before a court or

---

[54] "[P]aying one's tax[es] in their state of residence is without significance to one's domicile since it was quite logical for one to assume that it should be paid in that person's state of residence." *Porvaznik*, 456 B.R. at 740 (citing *Berger*, 210 F.2d at 405).

[55] *Kern*, 576 B.R. at 820. In *Kern*, the court decided that the debtors intended that their domicile remain in Virginia at the time of the bankruptcy petition filing, even though the debtors purchased another property in Tennessee prepetition with the intent to eventually move there after they sold their Virginia home. At the time of the filing the debtors remained in Virginia, voted in Virginia, attended church and worked in Virginia and registered their cars in Virginia. *Id.* The Court wrote that the debtors "cannot be domiciled in two places at once, and the place they have chosen as their domicile until [the Virginia property sold] is Virginia." *Id.* at 821.

[56] Docket number 28, Ex. 5.

15

agency."[57] "The application of judicial estoppel requires the following: (i) the party to be estopped must have taken two positions that are irreconcilably inconsistent, (ii) the party must have changed his position in bad faith—i.e., with intent to play fast and loose with the court and (iii) no lesser sanction would adequately remedy ... the litigant's misconduct.[58] Judicial estoppel is an "extraordinary remed[y] to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice."[59]

The Debtor admitted to domicile as a citizen of the state of Maryland in the Maryland District Court case. M&T argues the admission was material because it impacted the court's diversity jurisdiction. However, the Maryland District Court complaint states that M&T is a citizen of New York, Brick House is a citizen of Maryland and another defendant is a citizen of Virginia.[60] The parties had diversity without the Debtor's admission. M&T was not prejudiced by the admission because it obtained a judgment against the Debtor, which it then domesticated in Delaware, where the Debtor owns real property. These facts do not support application of the extraordinary remedy of judicial estoppel in these particular circumstances.[61]

---

[57] *In re Pursuit Capital Management, LLC*, 595 B.R. 631, 675–76 (Bankr. D. Del. 2018) (quoting *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779-80 (3d Cir. 2001)).

[58] *Id.* (quoting *Montrose Med. Grp.*, 243 F.3d at 779-80 (internal quotation marks omitted)).

[59] *In re Delta Petroleum Corp.*, 2015 WL 1577990, at *10 (Bankr. D. Del. Apr. 2, 2015) (citing *Klein v. Stahl GMBH & Co. Maschinefabrik,* 185 F.3d 98, 108 (3d Cir. 1999)).

[60] Docket number 28, Exhibit 5.

[61] M&T argues that the doctrine of collateral estoppel also prevents the Debtor from denying domicile in Maryland "Collateral estoppel may be appropriate when (i) the issue sought to be precluded is the same as the one involved in the prior action; (ii) the issue was actually litigated in the prior action; (iii) the issue was determined by a final and valid judgment; and (iv) the issue's determination was essential to the prior judgment." *In re Sportsman's Warehouse, Inc.*, 457 B.R. 372, 400 (Bankr. D. Del. 2011) (citing *In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997)). Domicile was not an issue that was actually litigated in the prior action, so collateral estoppel also is not applicable here.

"[T]he objecting party has the burden of proving that the exemptions are not properly claimed."[62] While the facts in this case present much to consider, the Court ultimately concludes that the evidence is not sufficient to overcome the Debtor's intention that his domicile is, and has been, in Delaware since he purchased the Delaware Property in 2014. M&T's objection to the Debtor's exemption will be overruled.

C. *Dismissal for bad faith filing*

M&T argues that the Debtor's bankruptcy case should be dismissed for filing in bad faith.[63] The Court's determination in the previous section that the Debtor is domiciled in Delaware eliminates M&T's argument that filing in Delaware was done in bad faith as forum shopping to obtain the benefit of Delaware's exemptions. M&T further argues, however, that the Debtor's filing was in bad faith because: (i) other than a $4,000 unsecured claim for attorney fees, M&T is the Debtor's only creditor, making the bankruptcy case essentially a two-party dispute; (ii) the Debtor filed solely to stop M&T's sheriff sale of the Delaware Property; and (iii) despite knowing about M&T's judgment lien, the Debtor failed to list M&T as a secured creditor on the Schedules.[64]

The Debtor argues that he filed the chapter 13 case in good faith. The Debtor notes that this is his first and only bankruptcy filing, and that there are no allegations

---

[62] Fed.R.Bankr.P 4003(c).
[63] M&T also argued that the bankruptcy case should be dismissed for improper venue under 28 U.S.C. § 1408. Because the Court has determined that the Debtor is domiciled in Delaware, venue is proper and M&T's motion to dismiss the case on these grounds is denied.
[64] Docket number 18, Part II.

17

that the Debtor transferred assets or filed the case to seek some unfair advantage.[65] The Debtor asserts that his "primary motivation for filing is to have an orderly repayment plan to preserve his assets and get a fresh start."[66]

"Whether a debtor has filed a bankruptcy petition in bad faith is a fact-sensitive assessment left to the discretion of the bankruptcy court, which makes this determination on a case-by-case basis in light of the totality of the circumstances."[67] The factors that have been deemed relevant to this analysis include

> the nature of the debt …; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.[68]

The Third Circuit has also instructed that "a finding of lack of good faith should not [be] lightly infer[red]" and that "dismissal should be confined carefully and utilized only in egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence."[69]

Filing a bankruptcy petition to stop a sheriff's sale of property will not, on its own, suggest a bad faith filing. Debtors often file bankruptcy cases to save their homes and "filing a petition to preserve property is not indicative of bad faith."[70]

---

[65] Docket number 22, ¶ 8.
[66] *Id.*
[67] *Gretz v. Inner Spirits, Inc. (In re Gretz)*, 2011 WL 1048635, *2 (Bankr. D. Del. Mar. 18, 2011) (citing *In re Myers,* 491 F.3d 120, 125 (3d Cir.2007)).
[68] *Id.*
[69] *Gretz,* 2011 WL 1048635, *2 (quoting *Perlin v. Hitachi Capital Am. Corp. (In re Perlin)*, 497 F.3d 364, 373 (3d Cir. 2007) (citations and internal quotation marks omitted)).
[70] *In re Cherokee Simeon Venture I, LLC*, 2013 WL 5984382, at *4 (Bankr. D. Del. Nov. 12, 2013).

Of concern in this case are M&T's allegations that the debtor filed the bankruptcy case to thwart collection of its large single debt, and that the debtor acted in bad faith by failing to list M&T as a secured creditor on his schedules. The Debtor responds that he has more than one creditor – legal fees in the amount of $4,000. The Debtor also notes that M&T was listed as an unsecured creditor, due to the Debtor's intent to file a motion to avoid M&T's lien because it impairs his claimed exemptions. Thus, M&T was listed in the Debtor's schedules and received notice of the bankruptcy filing.

Although the focus of the Debtor's filing is addressing M&T's efforts to collect its large claim, there are no allegations that the Debtor is concealing assets or sources of income to maintain a lavish lifestyle at the expense of his creditors. The Debtor's income is listed in the schedules as a pension, an annuity and government benefits. The facts before the Court do not present an egregious case warranting dismissal for lack of good faith. M&T's motion to dismiss the bankruptcy case will be denied.

D. *Motion to Avoid Judicial Lien under § 522(f)*

M&T filed a secured claim in this case based upon the judgment in the amount of $222,416.32 entered against the Debtor in Maryland District Court, which has been domesticated in Delaware and recorded as a judicial lien against the Delaware Property. The Debtor has moved to avoid M&T's lien against the Delaware Property under § 522(f).[71] M&T asserts that, as of the week before the Petition Date, it obtained a market analysis from a third-party vendor (Solidifi) concluding that value

---

[71] Docket no. 25.

of the Delaware Property was $215,000, which exceeds the Debtor's exemption amount.[72] The Debtor's Motion to Avoid Lien was filed after the hearing scheduled for the other motions and, in his briefing, the Debtor requests that the Court defer consideration of the Motion to Avoid Lien to allow additional time for obtaining information or discovery regarding the value of the Delaware Property. The Court will defer consideration to allow the parties additional time to take discovery and obtain further information regarding the value of the Delaware Property.

## CONCLUSION

For the reasons set forth herein, the Exemption Objection will be overruled, and the Dismissal Motion will be denied. The Court will defer consideration of the Motion to Avoid Lien. The parties will confer and submit a form of Order consistent with the Court's ruling withing seven (7) days of the date hereof.

BY THE COURT:

Brendan Linehan Shannon
United States Bankruptcy Judge

Dated: May 26, 2020
Wilmington, Delaware

---

[72] Docket number 28, Ex. 10.